| GRIMBALL | CIVIL ACTION |
|---|---|
| VERSUS | NO: 10-3657 |
| NEW ORLEANS CITY ET AL. | SECTION: "J"(3) |

## ORDER AND REASONS

Before the Court are Defendant Sean West's Motion to Quash Service and Alternatively, Motion to Dismiss Pursuant to FRCP Rule 12(b) (Rec. Doc. 34), Plaintiff Renaldo Grimball's Opposition (Rec. Doc. 36), and West's Supplemental Memorandum in Support (Rec. Doc. 42). The motion is before the Court on supporting memoranda, without oral argument. Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be DENIED.

## PROCEDURAL HISTORY AND BACKGROUND FACTS

This case arises from an alleged cruel joke played by the defendants during the plaintiff's shift working at a restaurant. On October 17, 2009, Plaintiff Grimball was employed as a

dishwasher and preparatory cook at the U.S. Prime Steakhouse (the "Restaurant") at 535 Tchoupitoulas Street in New Orleans, Louisiana. Grimball was working the dinner shift that evening under the management of Defendant Aaron Haggman, who accused Grimball of smoking marijuana in the bathroom during his shift. Grimball denied the accusation, but Haggman told Grimball that he "could go get a friend cop from the bar" to prove that his accusation was true. Rec. Doc. 1, at 3, ¶ 9. Because Grimball thought Haggman was joking, Grimball told him to go ahead.

Haggman left the kitchen and entered the bar, and then returned to the kitchen with Defendant West. Once they were in the kitchen, Haggman allegedly told West, "I think he [Grimball] has been smoking. I think he has contraband. ... Check him out. I want to see if he's got weed on him." Id. at 4, ¶ 11. Haggman allegedly then asked West, "Sean, do you have your credentials on?", and West pulled up his shirt to reveal a holstered firearm. Id., ¶¶ 12-13. West then allegedly told Grimball to put his hands on the wall, pulled out his gun and pointed it at Grimball, pushed Grimball across the kitchen and against the freezer, pressed Grimball's elbow into his back, and frisked Grimball with his free hand. West announced that he had found a bag of "perp" in Grimball's pocket, but he never produced anything.

Grimball alleges that he "suffered bruising and soreness in his back and shoulders due to aggressive pushing and elbowing prior to and during the search by Officer West, causing him pain and suffering and to be unable to work for a period of weeks." Id., ¶ 18.  Additionally, Grimball alleges that he "suffered embarrassment, emotional distress and anxiety" and "could no longer continue his employment at the U.S. Prime Steakhouse and suffered a loss of wages and benefits."  Id. at 5, ¶¶ 21, 23. Following the incident, Grimball filed a complaint with the New Orleans Police Department's Public Integrity Bureau ("PIB") and gave a taped statement about the incident as a part of the PIB's investigation.

Grimball avers that "it was contrary to the Constitution and laws of the United States, as well of the State of Louisiana, to subject a person to excessive force and cruel and unusual punishment, unreasonable search or seizure, and false arrest." Id. at 7, ¶ 31.  Grimball alleges that the defendants violated the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution; Title 42 U.S.C. Sections 1983, 1985, and 1986; and Louisiana state law.  Grimball requests a declaratory judgment, special damages, general damages, punitive damages, nominal damages, civil penalties, a permanent injunction

to end certain policies and practices of the defendants, litigation costs, and attorney's fees. He requests a jury trial.

Grimball filed his complaint on October 16, 2010, one day short of one year after the date of the alleged incident. Rec. Doc. 1. Ten days later, on October 26, 2010, Grimball requested that summonses issue. Rec. Doc. 3.[1] Several months later, the Court issued a call docket notice because of lack of service on any defendant. Rec. Doc. 5. On the same day the call docket notice issued, on February 3, 2011, service was made on the first defendants to be served in the lawsuit. Rec. Docs. 7-8 (returns of summonses for New Orleans City and New Orleans Police Department). At the May 25, 2011 call docket hearing, the Court ordered the matter passed 30 days. Rec. Doc. 10. A couple weeks later, the Court issued a second call docket notice, noting absence of service on West or Haggman. Rec. Doc. 11. On August 16, 2011, Grimball, for the second time, requested that a summons issue as to West, and also that a summons issue as to Haggman; no address was listed for either defendant. Rec. Doc. 18. During the second call docket hearing, which was held on August 31, 2011, the Court again ordered the matter passed for 30 days.

---

[1] No address was listed for Defendants Sean West or Aaron Haggman. Rec. Docs. 3-4, 3-5.

Rec. Doc. 22.  A few days later, the Court issued a call docket notice for the third time, noting that there still had been no service on West or Haggman.  Rec. Doc. 23.  During the Court's third call docket hearing, which was held on November 9, 2011, the Court again passed the matter for 30 days, this time stating that any defendant not served or defaulted would be dismissed. Rec. Doc. 24.

At last, on November 16, 2011—more than a year after the lawsuit was filed—West was personally served by a process server. Rec. Doc. 25, at 2.  On December 7, 2011, West, who was *pro se* at the time, moved for an extension of time to file responsive pleadings and to obtain counsel, which this Court granted on December 19, 2011.  Rec. Docs. 26, 28.  On December 28, 2011, the date West's answer was due, West filed a second motion for extension of time because he had been unable to obtain legal representation; the Court granted the motion on January 6, 2012. Rec. Docs. 30-31.  On that same date, the Court dismissed without prejudice all claims against Haggman because of no proof of service in the record.  Rec. Doc. 32.  On the due date for responding to the complaint, West, via his counsel, filed the instant motion to dismiss.  Rec. Doc. 34.

## THE PARTIES' ARGUMENTS

West moves for an order quashing service of the complaint or
alternatively dismissing the complaint against him pursuant to
Federal Rule of Civil Procedure 12(b)(5) for insufficient service
of process.  West additionally moves that the claims against him
brought under Title 42 U.S.C. Sections 1983 et seq. be dismissed
pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure
to state a claim upon which relief can be granted.

West contends that service on him should be quashed and the
complaint should be dismissed because he was not served with the
summons and complaint within 120 days after the complaint was
filed, as required by Federal Rule of Civil Procedure 4(m).  West
asserts that dismissal is proper because he was not served until
396 days after suit was filed and because Grimball has not made a
sufficient showing of good cause to extend the time period for
service.  West points to Grimball's failure to attempt to serve
any defendant until 110 days after filing suit and his failure to
file a motion for extension of time as evidence of a lack of
diligence in attempting to serve West.

West argues that this Court should not exercise its
discretion to grant an extension of the time period for service
because there is a clear record of delay on the part of the

Grimball and actual prejudice to West. West asserts that Grimball waited until the statute of limitations was about to run before filing his complaint and then waited until he was prompted by this Court during a docket call, 110 days after filing, to attempt to serve any of the defendants. Additionally, West asserts that the delay in service has greatly prejudiced his ability to defend against Grimball's claims because the Restaurant has closed, West no longer has access to the premises or the potential testimony of employees who were present during the events at issue, and witnesses are no longer available or their memories have dulled.

West points to a number of circumstances that he alleges show dilatory conduct and the absence of good cause necessary to extend the 120-day period for service of process. West avers that the service made on him on November 16, 2011 was at a courthouse during a child support hearing. West asserts that minute entries from the 22nd Judicial District Court reveal that West had previously been present in open court on October 21, 2010, January 20, 2011, March 30, 2011, and June 24, 2011—prior dates on which Grimball could have had West personally served. West argues that had Grimball been more diligent in filing his claim, he could have served West at a police station up until

June 16, 2010, when West's employment by the New Orleans Police Department ("NOPD") was terminated as a result of the PIB investigation concerning the October 2009 incident at the Restaurant. West was at the City Hall for a civil service appeal hearing on November 11, 2010, and he argues that Grimball could have served him there on that date.

Grimball contends that he made good faith efforts to locate and serve West and that there is good cause for extending the 120-day service period. Grimball asserts that prior to filing suit, he sent two open records requests to NOPD but received nothing in return until February 2011. Grimball also filed a complaint with the PIB, which became the impetus for West's termination six months before the instant suit was filed. Further, prior to filing suit, Grimball and his lawyer attempted to attend a civil service commission hearing, but were told that the hearing was being postponed and that they would not be allowed to speak with West at the hearing.

Grimball avers that during the 120 days following the filing of the complaint, his attorney communicated with a City of New Orleans ("City") attorney regarding a civil service commission hearing on West's termination and interviewed a former co-worker of Haggman and West. Grimball's counsel avers that he hired a

law student to go to the location where the incident took place to inquire about Haggman and West and that he called Louisiana residents listed in the online white pages under the name "Sean West."[2]  Grimball also asserts that his actions taken beyond the 120-day window were sufficient to extend the 120-day deadline: service of discovery on the City requesting West's last known address and other information; filing of a motion to compel this discovery; leaving a voicemail message after calling the phone number listed for West at the address provided by the City; attempting service upon West, only for West to refuse to answer the door[3]; attempting service at a different address, where Grimball's attorney learned indirectly from West's ex-wife that West had a child support hearing in the near future; and having a process server personally serve West at the child support hearing.

Grimball also contends that West cannot demonstrate prejudice from the late service.  Grimball argues that West's

[2] Grimball's counsel does not indicate the time period during which he made these phone calls.  The law student that he allegedly hired visited the bar on February 4, 5, and 6, 2011—during the 120-day window for service.  <u>See</u> Rec. Doc. 36-1, at 2.  Interestingly, the law student allegedly undertook this undercover work for Grimball's attorney immediately following the Court's call docket docket notice of February 3, 2011.  Rec. Doc. 5.

[3] West avers that the process server attempted to serve him at 501 St. Mary, but that he lives at 521 St. Mary.  He also avers that he could not have refused to answer the door, not only because he did not live at 501 St. Mary, but also because he was at work at the time of the alleged service attempt.

counsel's recitation of facts reveals extensive knowledge that must have come from West's investigation of the facts underlying the case.  Additionally, Grimball argues that West has already had occasion to investigate the facts and prepare a defense during the PIB investigation and in connection with the civil service hearing on the termination of West's employment.  To these arguments, West responds that he was unable to cross examine witnesses or put on his own evidence during the PIB investigation, and that he did not conduct his own investigation or locate witnesses during the PIB investigation.

As an alternative argument for dismissal, West contends that the claims against him under Title 42 U.S.C. Sections 1983 et seq. should be dismissed pursuant to Federal Rule 12(b)(6) for failure to state a claim upon which relief can be granted.  West asserts that Grimball failed to allege any conduct that constitutes action under color of state law.  He asserts that he did not act in the course and scope of his employment at the time of the incident, that Grimball admits that the incident was intended as a joke, and that he was not acting on behalf of a state or local entity or pursuant to any department regulation when he entered the Restaurant kitchen.  West points out that the alleged acts of holding a gun to someone's head and digging

through his pockets are activities that could be performed by a mugger just as easily as by a police officer, and that Grimball does not allege that West identified himself as a police officer. Further, West argues that, because Grimball has failed to state any claim against West over which the Court has original jurisdiction, the Court should decline to exercise pendent jurisdiction over Grimball's state law claims.

In response to West's Section 1983 argument, Grimball contends that West's alleged wrongful actions were performed under color of law because West used his apparent or real authority as a police officer to perform a search and seizure for contraband, which is normally a police function. Additionally, he argues that West used his status as a police officer to make Grimball succumb to an illegal search. Finally, Grimball argues that even if the Court were to dismiss the Section 1983 claim against West, the state law claims would be pendent to the federal claims against the remaining defendants.

**DISCUSSION**

**A. Rule 12(b)(5) Motion**

**1. Rule 4(m) Standard**

Under Federal Rule of Civil Procedure 12(b)(5), a defendant

may assert insufficient service of process as a defense to a claim for relief in federal court, and Rule 4 governs the service requirements regarding the summons and the complaint.  Rule 4(m) permits a district court to dismiss a case without prejudice if a plaintiff fails to comply with its mandates.  <u>Millan v. USAA Gen. Indem. Co.</u>, 546 F.3d 321, 325 (5th Cir. 2008).  Under Rule 4(m):

> If a defendant is not served within 120 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time.  But if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period.

FED. R. CIV. P. 4(m).  Therefore, when a plaintiff fails to serve a defendant within the 120-day period, the district court has two choices:  dismiss the action without prejudice, or direct that service be effected within a specified time.  <u>See</u> <u>Thompson v. Brown</u>, 91 F.3d 20, 21 (5th Cir.  1996).  If, however, a plaintiff can establish good cause for the failure to timely serve a defendant, the district court must extend the time for service.  <u>Id</u>.

Grimball filed his complaint on October 16, 2010.  One-hundred twenty days thereafter was Sunday, February 13, 2011.  Therefore, the Rule 4(m) period for service expired on the

following day, Monday, February 14, 2011.[4]  West was not served

until November 16, 2011, outside of the 120-day window.  Thus,

this Court must determine, based on Grimball's actions that took

place within the 120-day period, whether he has shown good cause

for his failure to timely serve West.  See Winters v. Teledyne

Movible Offshore, Inc., 776 F.2d 1304, 1305-06 (5th Cir. 1985)

("It would appear to be generally irrelevant that the defendant

not served within the 120-day period later finds out about the

suit or is in fact later served, so long as there was not good

cause for the failure to serve within the 120 days.").

　　"'[G]ood cause' under Rule 4(m) requires 'at least as much

as would be required to show excusable neglect, as to which

simple inadvertence or mistake of counsel or ignorance of the

rules usually does not suffice.'"  Gartin v. Par Pharm. Cos., 289

F. App'x 688, 692 (5th Cir. 2008) (citing Lambert v. United

States, 44 F.3d 296, 299 (5th Cir. 1995)).  Where a party

requests an extension of time, relevant factors used to determine

whether there has been "excusable neglect" include:  "'the danger

of prejudice to the [non-movant], the length of the delay and its

potential impact on the judicial proceedings, the reason for the

---

[4] See Fed. R. Civ. P. 6(a)(1)(C) (providing that if the last day of a
time period falls on a Sunday, the period continues to run until the end of
the next day).

delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" <u>Adams v. Travelers Indem. Co. of Conn.</u>, 465 F.3d 156, 161 n.8 (5th Cir. 2006).  Stated differently, "one is required to be diligent in serving process, as well as pure of heart, before good cause will be found." <u>Resolution Trust Corp. v. Starkey</u>, 41 F.3d 1018, 1022 (5th Cir. 1995).

### 2. Analysis of Untimely Service

In this case, there is the possibility of prejudice to West, and the length of delay in this case has been considerable.  It took Grimball over a year to have West served, during which time the memories of witnesses who were at the Restaurant are probably not as crisp as they once were.  The Restaurant is alleged no longer to be open, which likely has had a dispersant effect on the availability of witnesses and evidence.  These factors weigh against a finding of good cause, but the most important factor in this case is the reason for delay and whether it was within Grimball's control.

In considering the delay in this case, it is first important to note that Grimball was not required to take every conceivable measure to effect service.  West avers that he was present in state court in St. Tammany Parish on multiple occasions from

October 2010 through the date on which service was made over a year later. However, the only apparent reason Grimball eventually discovered that West would make a court appearance on November 16, 2011 was that Grimball's process server, while attempting service at a Slidell address, happened to communicate with West's ex-wife about West's child support hearing. It is unreasonable to suggest that Grimball should have searched several state court dockets early in the instant case, before he even had the Slidell address that would later permit him to know which court dockets to search. West also argues that Grimball could have served him personally at a police station prior to his termination from the police force in June 2010, but Grimball cannot be expected to have anticipated West's termination date. Besides, Grimball had not even filed his complaint in June 2010.

Turning to Grimball's actions from October 2010 until February 2011, which contained the 120-day period for service, Grimball does allege a few affirmative attempts by his attorney to find and serve West. See Rec. Doc. 36-1, at 1-4 (affidavit of Alan Kansas). Accepting his allegations as true for purposes of the instant motion, Grimball's attorney tried to determine West's whereabouts during an October 2010 interview of Grimball's former co-worker and was unable to attend a PIB hearing in November 2010

that the NOPD canceled.  It is unclear how these efforts should

be characterized.  On the one hand, perhaps they at least show

good-faith efforts to obtain an address for West.  Conversely,

Grimball provides no details regarding the subject matter of the

alleged conversation with the former co-employee, and it is

unclear whether attendance at the civil service hearing would

have been reasonably calculated to achieve service.

As the February 14, 2011 Rule 4(m) deadline approached, the

Court issued its call docket notice on February 3, 2011.

Notably, on the three immediately following days, Grimball's law

student intern attempted to dig up information about West and

Haggman at the former location of the Restaurant.  Grimball's

attorney avers that he hired the law student but does not state

whether the instruction to the intern to perform the

investigative work was given before or after the Court's call

docket notice.  Grimball's attorney avers, without providing

dates, that he placed phone calls to Louisiana residents with the

name "Sean West" listed in the online white pages.  It is unclear

whether these alleged calls occurred prior to the Rule 4(m)

deadline.

Even accepting these allegations as true, there are several

things Grimball's attorney left undone that require but have not

received any explanation.  Grimball's attorney did not request an extension of the deadline to serve West, despite having received a call docket notice from this Court that none of the defendants had been served—110 days after suit was filed.  Additionally, Grimball's attorney neglected to serve the NOPD, a much easier target for service of process with an ascertainable address, until the day the Court's notice issued.  It is unclear why Grimball's attorney would wait more than 100 days to serve the City or the NOPD.  If he had made service earlier on those defendants, he could have communicated with the City's or NOPD's attorney concerning West's address.  Grimball's failure to timely serve West does not appear to be the fault of some outside factor, as in Tuggle v. MMR-AEI Constructors, Inc., No. 08-62, 2008 WL 3983847, at *2 (M.D. La. Aug. 27, 2008) (good cause based on the serious medical condition of plaintiff's counsel), or due to exceptional circumstances beyond his control, as in Raby v. National Express Corp./ATC, 03-1000, 2004 WL 1737909, at *1 (E.D. La. July 29, 2004) (plaintiff's service in the armed forces excused her noncompliance with Rule 4(m)).  In the final analysis, whether Grimball meets the "good cause" standard is a close call.

Even if Grimball fails to show good cause, Rule 4(m) allows an extension of time at the discretion of the district court. See Thompson, 91 F.3d at 21; Henderson v. United States, 517 U.S. 654, 662-63 (1996) (citing Advisory Committee's Notes on FED. R. CIV. P. 4, 28 U.S.C. App., p. 654) ("Most recently, in 1993 amendments to the Rules, courts have been accorded discretion to enlarge the 120-day period 'even if there is no good cause shown.'"). Courts have considered various circumstances in deciding whether to extend the time period for service. See, e.g., Boazman v. Econ. Lab., Inc., 537 F.2d 210, 213 (5th Cir. 1976) (in the context of failure to prosecute, considering whether the applicable statute of limitations would bar the refiled action); Roulston v. Yazoo River Towing, Inc., No. 03-2791, 2004 WL 1043140, at *1 (E.D. La. May 6, 2004) (considering the potential waste of judicial resources if the case were dismissed, only to be refiled within the statutory limitation period); Alden v. Allied Adult & Child Clinic, L.L.C., No. 01-371, 2002 WL 1684553, at *1 (E.D. La. July 22, 2002) (considering whether the defendant would be prejudiced by an extension of the 120-day period). Important to the instant case, "[a] discretionary extension may be warranted, 'for example, if the applicable statute of limitations would bar the refiled action .

18

. . .'"".  <u>Millan</u>, 546 F.3d at 325.

Here, the applicable statute of limitations would likely bar
a refiled action if Grimball's case were dismissed without
prejudice, so a dismissal without prejudice would have the effect
of a dismissal with prejudice.  The applicable statute of
limitations in a Section 1983 action is the state limitation
period for personal injury actions.  <u>Walker v. Epps</u>, 550 F.3d
407, 411 (5th Cir. 2008) (citing <u>Wilson v. Garcia</u>, 471 U.S. 261,
279 (1985)).  In Louisiana, the prescriptive period for personal
injury actions is one year.  LA. CIV. CODE art. 3492.  Under
Louisiana law, prescription is normally interrupted when a
plaintiff files suit in a court of competent jurisdiction and
proper venue, LA. CIV. CODE art. 3462, and this principle applies
when the suit is filed in federal court, <u>see</u> <u>Allo v. Horne</u>, 636
So. 2d 1048 (La. App. 5th Cir. 1994).  However, interruption is
considered never to have occurred if the plaintiff abandons the
action, voluntarily dismisses the action at any time either
before the defendant has made any appearance of record or
thereafter, or fails to prosecute the suit at the trial.  LA.
CIV. CODE art. 3463.

In <u>Hawkins v. McHugh</u>, 46 F.3d 10, 13 (5th Cir. 1995), the
Fifth Circuit held that a dismissal by a federal district court

for failure to timely serve counts as "abandonment" under the meaning of Louisiana Civil Code article 3463, and thus annuls the interruption of prescription where Louisiana law provides the rules of limitations. Thus, if Grimball's case were dismissed pursuant to Rule 4(m) and Grimball attempted to refile his complaint against West, prescription would likely bar the refiled action.[5] As previously noted, Grimball filed his lawsuit on October 16, 2010, one day shy of one year following the Restaurant incident; without the benefit of interruption of prescription, his claim was time-barred in October 2010. In effect, then, a dismissal would be with prejudice.

In the Fifth Circuit, a "'dismissal with prejudice is warranted only where "a clear record of delay or contumacious conduct by the plaintiff" exists and a "lesser sanction would not better serve the interests of justice."'" Millan, 546 F.3d at 326. Under this heightened standard, a "'delay which warrants dismissal with prejudice must be longer than just a few months; instead, the delay must be characterized by "significant periods of total inactivity."'" Id. at 326-27. Applying these standards,

---

[5] The Court does not, and need not, make a ruling on any prescription issue, for the likelihood of the limitation period having run weighs in favor of the Court's exercise of discretion to extend the 120-day period. See Millan, 546 F.3d at 326 (where the parties agreed that dismissal of the claims would "likely have the effect of dismissal with prejudice" because of the applicable statute of limitations, a heightened standard of review applied).

the Court finds it appropriate to exercise its discretion in permitting the case against West to proceed.

First, Grimball's conduct has not been shown to be contumacious. "Contumacious conduct is that which goes beyond mere negligence and evinces 'stubborn resistance to authority.'" Webb v. Morella, No. 11-30175, 2012 WL 45411, at *3 (5th Cir. Jan. 9, 2012) (quoting Millan, 546 F.3d at 327). Although perhaps irritating to the judicial system that Grimball's attorney took so long to effect service, rather than acting with flagrancy or rebellion, he appeared at the Court's call docket hearings, at which the Court each time passed the matter 30 days based on counsel's representations to the Court. Cf. Millan, 546 F.3d at 327 (finding that where the district court had ordered the case passed for 30 days after its instructions to plaintiff's attorney, which suggested that the attorney had complied with the district court's order, the conduct was "far short of 'contumacious'").

Second, the Court finds that there is no clear record of delay as would be required to effectively dismiss with prejudice the claims against West. Per the Court's previous discussion, there have been no significant periods of total inactivity by Grimball's attorney. Furthermore, during the months in between

the Court's several call docket hearings, Grimball has served
discovery concerning West on the City, moved to compel that
discovery, and attempted service at a couple of different
addresses.  Without resolving the dispute over whether the
process server initially attempted service at the wrong address
on St. Mary's Street, the fact that from February 2011 until
eventual service on West in November 2011, Grimball's attorney
continued to attempt service, weighs in favor of the denial of
West's motion.  Additionally, because West was served several
months ago, judicial efficiency is best served by allowing the
case to go forward.

The Court acknowledges the potential for prejudice to West
but is not persuaded that it should result in dismissal.  West
likely knew that a suit was possible, and during the months
leading up to the filing of the suit, he was the subject of a PIB
investigation.  Because of the absence of a clear record of delay
or contumacious conduct, and the likelihood that a dismissal
would effectively be with prejudice, the Court holds that
dismissal for insufficient service of process would be improper.

**B.  Rule 12(b)(6) Motion**

 **1.  Legal Standard**

Under the Federal Rules of Civil Procedure, a complaint must

contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  The complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 346 (2005).  The allegations "must be simple, concise, and direct." FED. R. CIV. P. 8(d)(1).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 547 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. Lormand v. U.S. Unwired, Inc., 565 F.3d 228, 232-33 (5th Cir. 2009); Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996).  The court is not, however, bound to accept as true legal conclusions couched as factual allegations. Iqbal, 556 U.S. at 678.

**2.  Section 1983 Claim Against West**

For a plaintiff to state a claim under Title 42 U.S.C.

Section 1983, he "must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). To meet the "under color of state law" element, there must be a showing of "some manner of state responsibility for the acts that underlie" the claim. Auster Oil & Gas, Inc. v. Stream, 764 F.2d 381, 387 (5th Cir. 1985). When a Section 1983 action is brought against a state official, the requirement that the plaintiff prove that the defendant acted under color of state law is coextensive with the "state action" requirement of the Fourteenth Amendment. Lugar v. Edmondson Oil Co., Inc., 457 U.S. 922, 924, 929 (1982). "'[A]cts of officers in the ambit of their personal pursuits are plainly excluded'" from Section 1983 liability. U.S. v. Tarpley, 945 F.2d 806, 809 (5th Cir. 1991) (quoting Screws v. United States, 325 U.S. 91, 111 (1944)). Moreover, "individuals pursuing private aims and not acting by virtue of state authority are not acting under color of law purely because they are state officers." Id.

West argues that the complaint fails to state a Section 1983 claim because Grimball fails to allege conduct by West that constitutes state action. To address this issue, the Court

24

accepts the well-pleaded facts in the complaint as true, which
are as follows.  Haggman identified West as a cop.  <u>See</u> Rec. Doc.
1, at 3, ¶ 9 (Haggman told Grimball that he could prove Grimball
had been smoking marijuana by going to "get a friend cop from the
bar").  Haggman, in Grimball's presence, said to West, "I think
he has contraband. ... Check him out.  I want to see if he's got
weed on him."  <u>Id.</u>, at 4, ¶ 11.  Haggman looked at West and said,
"Sean, do you have your credentials on?"  <u>Id.</u>, ¶ 12.  West pulled
up his shirt to reveal a hand gun at his waist.  <u>Id.</u>, ¶ 13.  West
then pulled out his gun, pointed it at Grimball, and ordered him
in colorful terms to place his hands on the wall.  <u>Id.</u>, ¶ 14.
Maintaining the gun barrel only a few inches from Grimball's
head, West pushed Grimball across the kitchen to a freezer and
ordered Grimball to put his arms and legs against it.  <u>Id.</u>, ¶ 15.
West proceeded to press his elbow into Grimball's back and frisk
him with the other hand.  <u>Id.</u>, ¶ 16.  West announced that he had
found a bag of "perp" in Grimball's pocket.  <u>Id.</u>, ¶ 17.  West is
alleged to have acted within the course and scope of his
employment with the City.  <u>Id.</u> at 6-7, ¶ 30.  Although West
maintains that he was partaking of a meal in the Restaurant, was
in plain clothes, and was off duty at the time of the incident,
there are no such allegations in the complaint.

Although a private pursuit by a police officer does not constitute state action, the reasons motivating an officer's actions are generally irrelevant. See Brown v. Miller, 631 F.2d 408, 411 (5th Cir. 1980) ("[I]t is not significant for purposes of defeating a s[ection] 1983 action that the misuse of power under color of state law was motivated solely for purely personal reasons of pecuniary gain."). Therefore, the Court focuses not on the subjective intent of West or Haggman in allegedly plotting the confrontation with Grimball, but rather focuses upon the content of West's actions and their context in relation to Grimball. Grimball has alleged facts which indicate that West's authority as a police officer furthered his ability to carry out the sued-upon confrontation that he had with Grimball.

Grimball alleges that West searched him for drugs, after West was identified as a police officer by Haggman. In context, this establishes the "under-color-of-law" element of a Section 1983 claim because it indicates a use of power to accomplish what is ordinarily a law enforcement function. Specifically, West was asked in Grimball's presence to search Grimball for "contraband"; West proceeded to forcefully detain Grimball and search him for drugs, afterward announcing the result of his search. West implicitly asserted that his gun constituted "credentials"

through revealing it when asked to do so by Haggman.  This
implicit reference by West to his status as a police officer, in
combination with his use of "credentials" (i.e., holding Grimball
at gunpoint) to persuade Grimball to submit to a drug
search—ordinarily a law enforcement function—indicates an
invocation by West of governmental authority vested in him to
enforce the laws.  See Pitchell v. Callan, 13 F.3d 545, 548 (2d
Cir. 1994) (citing Stengel v. Belcher, 522 F.2d 438, 441 (6th
Cir. 1975)) ("Liability also may exist where off-duty police
officers perform duties prescribed generally for police
officers.").  Grimball has alleged more than a merely private
pursuit by West, whose objective manifestations of law
enforcement authority were the direct cause of the constitutional
deprivation alleged by Grimball.

West asserts that because he was joking around, the episode
in the Restaurant kitchen was a private action rather than one
performed under color of state law.  There is support for the
proposition that playing a joke or general tomfoolery is conduct
that fails to invoke Section 1983.  See Townsend v. Moya, 291
F.3d 859, 862-63 (5th Cir. 2002) (where the parties were engaged
in the "purely private aim" of name-calling, they were engaged in
"horseplay," and thus were not acting under color of state law);

Harris v. Rhodes, 94 F.3d 196, 197-98 (5th Cir. 1996) (where the parties teased each other regarding personal attributes and the discussion involved "purely personal matters," there was "horseplay" and thus no action under color of state law when the defendant punched the plaintiff in the nose).  Although Grimball alleges that West and Haggman "decided to play a cruel joke" on him and avers that at least initially, the defendants appeared to be joking, he also alleges that the intensity and extremity of West's actions made Grimball question whether the incident was really a joke.  Rec. Doc. 1, at 3-5, ¶¶ 6-7, 9, 11, 20. Moreover, Grimball alleges that West pulled a gun on him and told him to "[p]ut [his] [expletive] hands on the wall," which exceeds the mere "horseplay" that may make an action wholly private in nature.  The well-pleaded facts indicate more than horseplay—a misuse by West of his power as a police officer with respect to his encounter with Grimball.

Cases cited by West are not persuasive and generally are distinguishable.  In Pitchell, 13 F.3d 545, although the officer acted as a private citizen, his action is distinguishable from that of West, who implicitly invoked state authority through the display of his "credentials" and his performance of a police function.  In contrast with Barna v. City of Perth Amboy, 42 F.3d

809 (3d Cir. 1994), which involved a personal family dispute, West allegedly forcefully detained Grimball and invoked state authority through his pat-down for drugs and the display of his weapon. In <u>Parrilla-Burgos v. Hernandez-Rivera</u>, 108 F.3d 445 (1st Cir. 1997), although the defendant initially asserted that he was a police officer, there was no causal relationship between the assertion and his later brawl with and shooting of the decedent. In contrast, West allegedly invoked law enforcement authority to facilitate the complained-of conduct, a drug search. Likewise, <u>Delcambre v. Delcambre</u>, 635 F.2d 407 (5th Cir. 1981) and <u>Hudson v. Maxey</u>, 856 F. Supp. 1223 (E.D. Mich. 1994) are distinguishable from the instant matter, in which more than a mere private pursuit is alleged.

The Court, assuming the veracity of the well-pleaded factual allegations, finds that they plausibly give rise to an inference that West acted under color of state law. See <u>Iqbal</u>, 556 U.S. at 679. West's motion to dismiss for failure to state a claim should be denied.


## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendant Sean West's Motion to Quash Service and Alternatively, Motion to

Dismiss Pursuant to FRCP Rule 12(b) (Rec. Doc. 34) is **DENIED** and

that this case will be placed on the Court's trial docket.

New Orleans, Louisiana, this 23rd day of April, 2012.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE